# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

JUDITH P. THOMAS,

      Plaintiff,

v.                                       Civil Action No. 2:07-0671

WELLS FARGO INSURANCE SERVICES
OF WEST VIRGINIA, INC., and
WELLS FARGO BANK, N.A.,

      Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS ON BEHALF OF DEFENDANTS
## WELLS FARGO INSURANCE SERVICES OR WEST VIRGINIA, INC.
## AND WELLS FARGO BANK, N.A.

Defendants Wells Fargo Insurance Services of West Virginia, Inc. and Wells

Fargo Bank, N.A. (collectively, "Wells Fargo"), by counsel, have moved this Court for an Order

dismissing Plaintiff Judith Thomas' ("Thomas") Complaint, in its entirety, pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Despite the multiple state law

disguises given to her claims, Thomas' alleged causes of action center around a single

disagreement between herself and Defendants - the amount of salary continuation pay (or

severance benefits) to which she was entitled upon termination from Wells Fargo.  As these

severance benefits were payable under the terms of a written employee welfare benefit plan, all

of Thomas' claims, regardless of their purported state law nature, are preempted by the broad

preemptive force of the *Employee Retirement Income Security Act of 1974* ("ERISA"), *29 U.S.C.*

*§§ 1001, et seq.*

Preemption leaves Thomas with only a federal claim arising under ERISA

predicated on her breach of contract claim.  The claim should be dismissed because it is barred

under the terms of the Agreement and Release voluntarily executed by Thomas. Alternatively, the ERISA claim should be dismissed because Thomas failed to exhaust her administrative remedies under the ERISA plan at issue.

## STATEMENT OF FACTS

For purposes of this motion, Defendants incorporate the facts set forth by Thomas in her complaint. Thomas was employed by Defendant, Wells Fargo Insurance Services of West Virginia, Inc. ("Wells Fargo Insurance"), a wholly-owned subsidiary of Defendant, Wells Fargo Bank, N.A ("Wells Fargo Bank"), from September 1990 to January 18, 2007. Compl. ¶¶ 1-3. Thomas served as General Counsel, Senior Vice President and Assistant Secretary for Wells Fargo Insurance and worked from an office located in Charleston, West Virginia. Compl. ¶ 6.

Thomas alleges that, during a telephone conversation with Wells Fargo Bank employee, David Garfield, on May 11, 2006, she was advised that she would become a "Counsel 4" in Wells Fargo Bank's legal department, effective June 11, 2006, and that, as part of this transfer, she would receive (a) an annual salary of $201,500.00; (b) a bonus for calendar year 2006 equal to 10-30% of her salary; and (c) certain stock options which Thomas claims are valued at around $30,000.00. Compl. ¶¶ 7-8. A little over one month later, on June 21, 2006, Thomas met with a lawyer employed by Wells Fargo Bank, Michael Watson, and advised him that she had received neither the new job classification nor the higher salary as allegedly discussed in the May 11 telephone conversation. Compl. ¶ 10-11.

Thomas alleges that Mr. Garfield and Mr. Watson discussed the job classification and compensation issues over the ensuing months but does not allege that she was part of such conversations. Compl. ¶ 13. Thomas asserts that, during a September 18, 2006, telephone conference, Mr. Garfield advised her that she would not receive the compensation discussed on

May 11, 2006, but would remain employed at the $150,000.00 salary level.  Compl. ¶ 15.

Thomas continued to work for Wells Fargo following this conversation until her termination.

Compl. ¶21.  At no time subsequent to May 11, 2006, was Thomas' salary ever increased above

$150,000.00.  Compl. ¶ 16.  Nor was Thomas transferred to a Counsel 4 position in 2006.

Compl. ¶ 16.[1]

On November 4, 2006, Mr. Garfield met with Thomas and advised her that her

employment with Wells Fargo would terminate effective January 18, 2007.  Compl. ¶¶ 19, 21.

Mr. Garfield advised Thomas that she would receive a bonus in the amount of $50,000.00 for

2006 and would continue to receive her "existing salary" for the period provided under the Wells

Fargo & Company  Salary Continuation Pay Plan ("the Plan")[2] should she agree to the terms of

the Plan.  Compl. ¶ 22.

The Plan provides that eligible employees may qualify for salary continuation pay

under the Plan upon a "Qualifying Event."  Compl., Ex. A at 3.  A Qualifying Event includes a

Position Elimination or a Substantial Position Change.  Compl., Ex. A at 3.  An eligible

employee who experiences a Qualifying Event must sign an Agreement and Release to be

entitled to the benefits afforded by the Plan.  Compl., Ex. A at 4.  Generally, an eligible

employee who experiences a Qualifying Event and signs the Agreement and Release is placed on

a salary continuation leave and receives salary continuation pay.  Compl., Ex. A at 4.  The

amount of payments is "determined by your covered pay, your completed years of service and

---

[1] Thomas alleges that she was classified as a Counsel 4 beginning in January 2007, after she had been notified she would be terminated and just prior to the effective date of termination.  Compl. ¶ 16.

[2] A copy of the Salary Continuation Pay Plan is attached as Exhibit A to the complaint.  As part of the pleadings, the Plan properly is considered by this Court in deciding the Rule 12(b)(6) motion.  Of course, even if the Plan were not incorporated into the pleadings by Thomas, as Defendants have moved for dismissal pursuant to both Rules 12(b)(6) **and** 12(b)(1), consideration of extrinsic evidence is certainly permissible when considering challenges to the Court's subject matter jurisdiction.  *See Williams v. United States*, 50 F.2d 299, 304 (4th Cir. 1995) ("the court may consider evidence beyond the scope of the pleadings to resolve factual disputes regarding jurisdiction").

your exemption status. . . ." Compl., Ex. A at 4.   "Covered Pay" is defined as an eligible

employee's "base salary." Compl., Ex. A at 5.

> The Plan further provides a process for filing claims and appeals under the Plan:

> > Normally, salary continuation pay will automatically be paid to all
> > eligible participants who qualify under the Plan.  However, if you
> > have not received this benefit and you believe that you are entitled
> > to it, or if you believe you are entitled to a larger benefit than you
> > are receiving, you may file a claim with the Plan Administrator.

Compl., Ex. A at 9.

> The Plan provides the time periods for filing claims and directs that the claim

must be in writing and delivered to the Plan Administrator, whose address is set forth in the Plan.

Compl., Ex. A at 9.  Claims review responsibility lies with the Wells Fargo Corporate Employee

Relations Department who must notify the participant of the decision to approve or deny a claim,

in writing, within 90 days in accordance with ERISA regulations.  Compl., Ex. A at 9-10.  The

Plan also provides a detailed appeals process that may be invoked if a claim is denied.  Compl.,

Ex. A at 10.

> The Plan conditions salary continuation pay on the execution of an Agreement

and Release.[3]  Compl., Ex. A at 6.  The Agreement and Release is part of the Plan, and the two

plans in conjunction create the right to salary continuation pay.  *See, generally*, Compl., Exs. A,

B.  The Plan provides:

> > To qualify for salary continuation pay under the Plan, you must
> > sign the Release contained in your displacement package.  The
> > Release is an agreement, signed by you and Wells Fargo, in which
> > you agree to give up any and all claims, actions or lawsuits against
> > Wells Fargo that relate to your employment with Wells Fargo.

---

[3] The Agreement and Release is attached to the complaint as Exhibit B and is thus properly considered part
of the pleadings. *See* n.2, *supra*.

4

You will have 45 days beginning with the first day of they Notice Period to consider the terms of the Release. In addition, after you sign the Release, you will have a 7-day revocation period . . . . If you sign the Release and do not revoke it during the revocation period, salary continuation pay will begin on the next payday following the Notice Period, unless you elect a lump sum severance payment. . . .

If you choose not to sign the Release or you revoke the Release, you will not receive salary continuation pay (or a lump sum severance payment) or be eligible for a salary continuation leave, and your employment will be terminated at the end of your Notice Period.

Compl., Ex. A at 6.

Thomas agreed to the terms of the Plan by executing the Agreement and Release on January 17, 2007. Compl. ¶ 24; Ex. B at 4. The Agreement and Release provides that, in order to receive salary continuation pay, Thomas must agree to release Wells Fargo "from all claims, liabilities, demands and causes of action, known or unknown, likely or unlikely, which you may have or claim to have . . . as a result of your employment or separation from employment" including "breach of express or implied contract." Compl., Ex. B at 3.

Salary continuation pay consisted of Thomas' "*base salary in existence on the effective date of her termination,* being January 18, 2007." Compl. ¶ 23 (emphasis added). Pursuant to the terms of the Plan, upon termination, Thomas was "to receive her *existing salary* for the period provided by [the Plan]," which period was eleven months. Compl. ¶ ¶ 22-23 (emphasis added). Despite the fact that Thomas claims $201,500.00 was the amount of her existing salary on the date of her termination, Thomas acknowledges that she never received payments based on an annual salary of $201,500.00 prior to termination. Compl.¶ 16. Rather, Thomas was paid a $150,000.00 salary at all times relevant to the complaint. Compl. ¶ 26.

## NATURE OF THOMAS' COMPLAINT

In her complaint, Thomas alleges breach of both oral and written contracts and makes various allegations pursuant to the West Virginia Wage Payment and Collection Act ("WPCA"). Specifically, Count I alleges that Thomas is owed the difference between $150,000.00, the salary paid to Thomas between June 11, 2006 and January 18, 2007, and $201,500.00, the amount she alleges was promised to her on May 11, 2006. Count II alleges a failure by Wells Fargo to pay Thomas' proper base salary under the terms of the Plan subsequent to January 18, 2007. Count III alleges a failure by Wells Fargo to pay Thomas stock options allegedly promised on May 11, 2006. Finally, Count IV alleges breach of the oral contract allegedly made on May 11, 2006, and a breach of the written Plan and Agreement and Release for failure to pay the proper base salary under the Plan beginning on June 11, 2006. All of the first three counts allege a failure by the Defendants to pay the alleged sums within 72 hours of the termination of her employment as required by the WPCA.

Central to Thomas' claims is that Wells Fargo failed to properly calculate her salary continuation pay under the Plan. Thomas does not dispute that she is a participant in the Plan and is entitled to salary continuation pay only by virtue of participation in the Plan. Rather, she disputes the timely payment of the amounts of benefits paid to her under the Plan upon her termination. Although Thomas does not allege that, while employed by Wells Fargo, she ever received more than the amount ultimately paid to her pursuant to the Plan – based on a base salary of $150,000.00 - she does allege that the amount paid to her pursuant to the terms of the Plan should have been calculated based on a salary of $201,500.00.

Thomas' claims all implicate the Plan and the Agreement and Release which, together, make up a plan that is indisputably an ERISA plan. Any salary continuation pay to

which Thomas is entitled is determined in accordance with the terms of the Plan coupled with the Agreement and Release. Accordingly, Thomas' claims are completely preempted under ERISA. Moreover, the recharacterized federal claim should be dismissed because Thomas waived all claims she may have against Wells Fargo. Alternatively, the complaint should be dismissed because Thomas failed to pursue the administrative remedies afforded under the Plan.

## STANDARD OF REVIEW

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "may attack the complaint on its face, in that the complaint fails to allege facts upon which the court can base jurisdiction, or it may attack the truth of underlying jurisdictional allegations contained in the complaint." *Lane v. David P. Jacobson & Co., Ltd.*, 880 F. Supp. 1091, 1094 (E.D. Va. 1995). Upon a challenge to the underlying allegations of the complaint, "the court may consider evidence outside of the complaint to determine whether sufficient facts support the jurisdictional allegations." *Id.*

Dismissal under Rule 12(b)(6) "is inappropriate unless, accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, 'it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996), quoting *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 n. 4 (4th Cir. 1993). However, when the existence of a meritorious affirmative defense is evident on the face of a complaint, dismissal is appropriate. *Id.*

## ARGUMENT OF LAW

A. **Thomas' purported claims for breach of contract and violations of the Wage Payment and Collection Act are being utilized as alternative means for recovering benefits under an ERISA plan and are therefore completely preempted.**

1. **The Plan and the Agreement and Release constitute an "employee welfare benefit plan" for the purposes of ERISA.**

The Plan states that it is an employee "welfare benefit plan" as that term is described under ERISA. Compl., Ex. A at 2. The Plan is essentially a severance plan. Although ERISA does not explicitly list severance plans in the definition of "employee welfare benefit plan," courts have consistently recognized that many severance plans should be considered "employee welfare benefit plans" for the purposes of ERISA.[4] *See, e.g., Holland v. Slack*, 772 F.2d 1140, 1145 (4th Cir. 1985), *cert. denied* 477 U.S. 903 (1986) ("The statutory language supports the designation of severance pay as an employee welfare benefit plan.").

The Plan complies with ERISA mandates by creating an administrator for the plan, advising participants of their rights under ERISA and establishing an internal administrative appeals process. Compl., Ex. A at 9-10. The Plan further confers managerial discretion on the administrator in determining whether employees are eligible for the receipt of severance benefits. Compl., Ex. A at 9-10. Clearly, the Plan at issue is an ERISA "employee welfare benefit plan."

---

[4] ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 302(c) of the Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions)." 29 U.S.C. § 1002(1).

The Agreement and Release is a plan document and is thus part of the ERISA Plan at issue. The Plan and the Agreement and Release must be read *in pari materia*. Both reference the other repeatedly and provide that no benefits will be paid under the Salary Continuation Pay Plan unless the Agreement and Release is executed. It is clear that executing the Agreement and Release is a condition to eligibility under the Plan and that the Agreement and Release is actually the most crucial part of the Plan itself. Accordingly, both the Plan and the Agreement and Release constitute a welfare benefit plan under ERISA.

### 2.    ERISA has broad preemptive powers.

ERISA's preemption provision provides:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b).

29 U.S.C. § 1144(a).

In general, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). ERISA provides a civil enforcement mechanism for aggrieved participants of ERISA plans. Specifically, § 502(a)(1)(B) permits a plan participant to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

ERISA's preemptive force combines with ERISA's civil enforcement mechanism to convert any state law cause of action that is within the scope of ERISA's civil enforcement

mechanism to a federal claim. *Davila*, 542 U.S. at 209.   The powerful preemptive force of ERISA is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* at 208.   Congress intended the regulation of employee benefit plans to be "exclusively a federal concern." *Id.* (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

### 3.   Thomas' claims satisfy the complete preemption test.

In determining whether claims are completely preempted under ERISA, the United States Supreme Court has instructed, "if an individual, at some point in time, could have brought his claim under *ERISA § 502(a)(1)(B)*, and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by *ERISA § 502(a)(1)(B)*." *Davila*, 542 U.S. at 210.

The United States Court of Appeals for the Fourth Circuit has articulated a three-part test to determine whether a claim is preempted that is similar to that outlined in *Davila*. First, the Court must determine if the plaintiff had standing to bring an ERISA claim.   Second, the claim must fall within the scope of an ERISA provision that can be enforced through § 502(a).   Third, the claim must not be capable of resolution without interpretation of the ERISA governed contract.   If all three conditions are satisfied, a state law cause of action is completely preempted.   *See Smith v. Logan*, 363 F. Supp. 2d 804, 809 (E.D. Va. 2004)(citing *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003)).

### a.   Standing

Applying the analysis utilized by the Fourth Circuit, it is apparent that all of Thomas' state law causes of action are preempted by ERISA.   First, Thomas does have standing

to bring her claims under ERISA and thus satisfies the first part of the preemption test.[5]  One has

standing to bring a claim under ERISA if she is or was a participant in the plan.  29 U.S.C. §

1132(a)(1).  Congress has defined an ERISA "participant" as "any employee or former employee

of an employer . . . who is or may become eligible to receive a benefit of any type from an

employee benefit plan which covers employees of such employer."  29 U.S.C. § 1002(7).

Thomas, given that she was eligible to receive, and did receive, severance benefits under the Plan

is a "participant" for purposes of ERISA.  Therefore she would have standing to pursue a claim

under the civil enforcement mechanism provided in § 502(a) to recover benefits she believes due

her under the Plan.

**b.     Thomas' claims could have been brought under § 502(a).**

It is equally clear that Thomas' claims satisfy the second element of the Fourth

Circuit's test.  All of those claims seek, *inter alia*, recovery of benefits Thomas believes due her

under the Plan.  All could have been brought under § 502(a) of ERISA which permits a civil

action "by a participant . . . to recover benefits due to him under the terms of his plan, to enforce

his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of

the plan."  29 U.S.C. § 1132(a)(1)(B).  "This provision is relatively straightforward. If a

participant or beneficiary believes that benefits promised to him under the terms of the plan are

not provided, he can bring suit seeking provision of those benefits."  *Davila*, 542 U.S. at 210.

All of Thomas' claims could have been brought under § 502(a).  Although guised

as a claim under the WPCA, Count II actually is a claim made directly pursuant to the Plan.

Thomas plainly states in Count II that "Defendants failed and refused to pay Plaintiff under the

Wells Fargo Salary Continuation Pay Plan at an annual base salary of $201,500.00."  Compl. ¶

---

[5] Thomas admits that she is a participant under the Plan.

30.  It is indisputable that this claim to recover benefits Thomas believes due her under the terms of the Plan could have been brought  under § 502(a) of ERISA.

Count IV just as clearly could have been brought under § 502(a).  Thomas alleges breach of the written Plan and the Agreement and Release.  Compl. ¶ 39.  In Count IV of her complaint, Thomas specifically requests an award of damages for "violation of the contractual agreement between the parties."  Compl. at 9.  These damages represent the amount of salary continuation pay to which Thomas believes she is entitled under the Plan.  She is suing to "recover benefits due to [her] under the terms of [her] plan. . . ."  29 U.S.C. § 1132(a)(1)(B).  This is a classic breach of contract claim based on the denial of benefits pursuant to the terms of an employee benefit plan that is almost always subject to ERISA preemption.  Thomas could have brought this claim under § 502(a).

As for Thomas' claim in Count IV regarding breach of an oral contract, Thomas is again challenging the amount of benefits received pursuant to the terms of the Plan, and this action could have been brought under § 502(a).  The Plan dictates the benefits to which Thomas was entitled upon termination from employment with Wells Fargo, and the Plan provides the *exclusive* severance benefits for eligible employees.  Compl., Ex. A at 2 ("you become immediately ineligible for salary continuation pay and a salary continuation leave under this Plan if:  You are a party to a written employment agreement or a separation agreement with Wells Fargo . . ., you are eligible for a different severance or pay arrangement . . ., or you are a participant in another plan . . . that provides severance, change in control or salary continuation

12

pay."). Thomas' claim regarding breach of oral contract is actually one seeking benefits under the terms of the Plan.[6] Otherwise, there is no severance benefit available to Thomas.

Finally, Thomas' claims in Counts I and III also satisfy the second prong of the complete preemption test. Like her other claims, these are preempted because the Plan provides the exclusive benefits an eligible employee may receive upon a Qualifying Event. Compl., Ex. A at 2. The essence of Thomas' claims challenges the benefits she received under the Plan, the only permissible source of payment following Thomas' termination from employment with Wells Fargo.

Judge Goodwin's recent decision in *Radcliff v. El Paso Corporation*, 377 F. Supp. 2d 558 (S.D. W. Va. 2005) is useful in analyzing Thomas' claims under the second prong of the Fourth Circuit's test. The plaintiff in *Radcliff* asserted causes of action for breach of contract, detrimental reliance and discrimination under the West Virginia Workers' Compensation Act. *Id.* at 560. According to Judge Goodwin, each of the three causes of action alleged by the plaintiff in *Radcliff* were focused on the defendants' "refusal to pay the plaintiff LTD [long term disability] benefits and/or severance pay." *Id.* at 563. Rather than rely on the Fourth Circuit's three-prong test, Judge Goodwin examined preemption under the rubric of the *Davila* decision. Analyzing whether the plaintiff's claims could have brought, at some point in time, under § 502(a)(1)(B), Judge Goodwin concluded as follows:

> Clearly, the plaintiff could have originally attempted to remedy this injury by bringing a *§ 502* action to 'recover benefits' or to 'enforce his rights.'

---

[6] As discussed *infra*, the breach of oral contract claim is clearly barred pursuant to the terms of the Agreement and Release.

13

*Id.* (internal citations omitted).[7]

Like the plaintiff in *Radcliff*, Thomas' allegations focus on the alleged wrongful denial of benefits under the Plan. Thomas believes the benefits due her under the Plan have not been provided. Apart from the Plan, there would be no severance benefits due at all. Regardless of the state law cloak given to these claims, each of them could have been brought under § 502(a) because the underlying element of damages and potential recovery is the benefit due under an ERISA employee welfare benefit plan. All causes of action satisfy the second element of the Fourth Circuit's test.

> **c.      Thomas' claims require an interpretation of the Plan and Agreement and Release.**

Finally, the last factor in the preemption test requires courts to determine whether the causes of action are capable of resolution without resort to an interpretation of an ERISA contract or whether "'any independent legal duty' is implicated by the defendants' action." *Radcliff v. El Paso Corp.*, 377 F. Supp. 2d 558, 563-64 (S.D.W. Va. 2005)(quoting *Davila*, 542 U.S. 200)). The claims for breach of contract as well as the claims under the WPCA, require an interpretation of the Plan and the definition of "covered pay" or "base salary" within the Plan for resolution, as well as an interpretation of the terms of the Agreement and Release.

The fourth factor of the Fourth Circuit's test is derived from the Supreme Court's rationale in *Davila* that requires courts to determine whether "'any independent legal duty' is implicated by the defendants' actions." *Radcliff*, 377 F. Supp. 2d at 563-64, quoting *Davila*, 542 U.S. 200). If there is an "independent legal duty" arising in any particular cause of action, that

---

[7] The issue examined by Judge Goodwin - whether a plaintiff could have brought a claim under ERISA's civil enforcement provision - is substantially similar to the second prong of the test articulated by the Fourth Circuit - whether the claim falls within the scope of a provision that can be enforced by § 502.

14

cause of action will be removed from "ERISA's preemptive scope." *Radcliff*, 377 F. Supp. 2d at 564.

In *Radcliff*, Judge Goodwin examined whether a plaintiff's discrimination claim, brought under the West Virginia Workers' Compensation Act, involved an independent legal duty or whether it was completely preempted by ERISA. In concluding that the claim was completely preempted, Judge Goodwin provided the following rationale:

> Here, the alleged discrimination is based entirely upon the defendants' refusal to pay benefits to the plaintiff. The plaintiff does not allege, for example, that the defendants discharged him from his employment in retaliation for his application for West Virginia workmen's compensation benefits. The basis for the alleged liability, therefore, depends entirely upon the existence and administration of the defendants' ERISA-governed LTD Plan and Severance Pay Plan. The only stated injury is the defendants' alleged refusal to pay benefits to the plaintiff under those plans . . . . In other words, the alleged basis for liability in each count of the plaintiff's complaint is wholly dependent on his alleged right to benefits under the terms of an ERISA-regulated plan.

*Id.* at 564-565. Judge Goodwin therefore found that ERISA completely preempted the plaintiff's claim. *Id.*

As in *Radcliff*, in this case, it is plainly impossible for any of the material issues presented in this case to be resolved without resorting to an interpretation of the Plan and the Agreement and Release. Thomas' allegations in Counts II and IV that the Plan was breached obviously cannot be resolved without interpretation of the contract that was allegedly breached.

The WPCA claims, Counts I and III, allege that Thomas was not paid the wages she alleges she was owed in a timely fashion pursuant to the WPCA. Thomas' claims under the WPCA also cannot be resolved without resort to the ERISA Plan. In analyzing whether a North Carolina wage payment act was preempted by ERISA, the Fourth Circuit stated:

15

> Given the unparalleled breadth of ERISA's preemption provision, we have no trouble concluding that the state actions at issue are preempted. The state law here essentially requires employers to pay wages due upon termination of employment, N.C. Gen. Stat. § 95-25.7. Insofar as this statue is invoked in pursuit of benefits allegedly due under [the] . . . severance pay plan, it 'relates to' an employee benefit plan covered by ERISA.

*Holland v. Slack*, 772 F.2d 1140, 1147 (4th Cir. 1985); *see, also, McMahon v. McDowell*, 794 F.2d 100 (3rd Cir. ...)(state wage payment and collection law preempted); *Henne v. Allis-Chalmers Corp.*, 660 F. Supp. 1464 (E.D. Wis. 1987)(same).

Moreover, Counts I and III, as well as Thomas' claim for breach of oral contract, like the other counts, cannot be decided without resort to the Plan and the Agreement and Release because an interpretation of these documents reveals that these claims are barred. Any claim for breach of an implied contract is barred and, consequently, there can be no implied contract on which Thomas can base her WPCA claims. Thomas' WPCA claims and her claim for breach of oral contract are all based on the same alleged oral promise by Wells Fargo to pay Thomas a higher salary after May 11, 2006. There can be no WPCA claim without proof of an underlying express or implied contract that promises the wages sought in such a claim. *See Boggess v. Housing Authority of the City of Charleston*, 273 F. Supp. 2d 729, 753 (S.D.W. Va. 2003)(WPCA claim dismissed, as plaintiff was not entitled to wages under an employment agreement that was void as a violation of state law).

Any implied contract on which Thomas is basing her WPCA claims was waived on at least two different occasions. First, Thomas waived any claim for an implied contract when she was told that she would not be paid the higher salary in September 2006 yet continued to work for Wells Fargo at the $150,000 annual salary level until her termination in January 2007. There is no allegation in the complaint that Thomas did anything to protest the decision

not to pay her the higher salary prior to being terminated.  By continuing to work for Wells Fargo at the same existing salary, Thomas waived any claim based on the alleged oral promise.

Second, and more importantly, Thomas waived any claim that she may have had with respect to the alleged implied contract when she executed the Agreement and Release.  The Agreement and Release, which was executed by Thomas on January 17, 2007, and which is attached to the complaint as Exhibit B, clearly states:

> You understand that you will receive the salary continuation pay described above only if you first sign this Agreement and deliver it to Displacement Services on or before January 18, 2007 and do not revoke it within the applicable revocation period following the date you sign the Agreement as described below.  If you fail to execute this Agreement, you will not receive any salary continuation pay or the Leave from the Company . . . .

> Compl., Ex. B at 2.

By signing the Agreement, Thomas released the Defendants "from all claims, liabilities, demands and causes of action, known or unknown, likely or unlikely, which [she] may have or claim[] to have . . . as a result of [her] employment or separation from employment." Compl., Ex. B at 3. The Agreement and Release specifically provides that Thomas released all "claims for breach of express or implied contract . . . ." Compl., Ex. B at 3.

Thomas signed the Agreement and Release upon termination from Wells Fargo and gave up all claims, including one for breach of any implied contract, at that time.  Thomas is an experienced lawyer and clearly understood the consequences of entering into the Agreement and Release.  She understood that absolutely no salary continuation pay would be paid if she did not sign the release.  This is clearly set forth in both the Plan and the Agreement and Release.

Thomas' claims under the WPCA and for breach of oral contract cannot be resolved without an interpretation of the Plan and the Agreement and Release.  Upon such an interpretation, it is clear that there is no express or implied agreement to pay the wages Thomas alleges were promised, and thus there is nothing on which to base a WPCA claim. [8]  "All her claims are a challenge to the calculation of her benefits and to the amount of benefits she received.  The claims contain no independent legal duty."  *Deem v. BB&T Corp.*, 2007 U.S. Dist. LEXIS 46013, 13 (S.D.W. Va. 2007).  Thus, the third factor in the complete preemption test is satisfied as to all of Thomas' claims.

**B.     Thomas' claims must be dismissed.**

Based on the foregoing analysis, Thomas' purported state law causes of action for breach of contract and violations of the WPCA are completely preempted by ERISA.  Complete preemption results in the conversion of her claims to a federal claim under ERISA.  The newly converted federal action is subject to dismissal because the claim is barred by the terms of the Agreement and Release.  Alternatively, the federal ERISA claim is subject to dismissal because Thomas failed to exhaust her administrative remedies under ERISA.

---

[8] Should the Court disagree that one or more of Thomas' claims are completely preempted, it should retain supplemental jurisdiction over such claim(s) pursuant to 28 U.S.C. § 1367(a). The Court must find only one of Thomas' claims preempted to exercise jurisdiction over this action. *See Memorial Hermann Hospital System v. Aetna Health, Inc.*, 2007 U.S. Dist. LEXIS 42126, 7 (S.D. Texas 2007)( "at least one of the plaintiff's claims must be completely preempted by ERISA § 502(a), 29 U. S.C. § 1132(a), for this court to have subject-matter jurisdiction over the action.")(citing *Davila*, 542 U.S. at 207)(emphasis added)). Once deciding to retain jurisdiction, regardless of whether or not the Court determines that Thomas' claim for breach of oral contract or her WPCA claims are completely preempted by ERISA, these claims are subject to outright dismissal based on the Agreement and Release.  As discussed above, Thomas relinquished any claim she may have had for breach of an oral or implied contract when she voluntarily executed the Agreement and Release, and by waiving such a claim there is nothing on which to base a WPCA claim.

**1.     Thomas' claims are barred by the Agreement and Release.**

Thomas' claims are barred by the Agreement and Release and must be dismissed. As set forth above, by executing the Agreement and Release, Thomas agreed to release all claims she "may have, or could have" against Wells Fargo. Compl., Ex. B ¶ D. The release specifically applies to "claims arising out of or related to the Wells Fargo & Company Salary Continuation Pay Plan." Compl., Ex. B at 3. The release is binding, and Thomas is an experienced lawyer who cannot claim that she did not understand the document she voluntarily executed. Because Thomas executed the Agreement and Release, her claims are barred and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9]

**2.     Thomas has no valid ERISA claim because she has failed to exhaust the internal administrative procedures set forth in the Plan.**

Alternatively, Thomas' preempted claims must be dismissed because Thomas failed to pursue the administrative remedies afforded her under the Plan. Although ERISA does not contain an express exhaustion of administrative remedies provision, courts have consistently found an implied duty to exhaust administrative remedies. According to the Fourth Circuit Court of Appeals, "an ERISA claimant is generally required to exhaust administrative remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132. This exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." *Makar v. Health Care Corp. of the Mid-Atlantic*, 872 F.2d 80, 82 (4th Cir. 1989).

---

[9] By pursuing this civil action, Thomas has breached the Agreement and Release. Consequently, Thomas has forfeited her right to any future benefits, if any, to be paid under the Plan, and Wells Fargo is entitled to recover any and all severance benefits already paid to Thomas pursuant to the Plan. Compl., Ex. B ¶ 12.

Considering these exhaustion requirements, courts have found that a plaintiff's failure to exhaust administrative remedies available under an ERISA plan creates a jurisdictional deficiency and is grounds for dismissal. *See Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) ("We have repeatedly held that plaintiffs must exhaust their administrative remedies under a covered benefits plan prior to bringing an ERISA claim in federal court."); *Midpoint Service Provider, Inc. v. Connecticut General Life Ins. Co.*, 152 F. Supp. 2d 306, 310 n.4 (S.D. N.Y. 2001) ("Failure to exhaust, however, is a jurisdictional deficiency, and the court must dismiss the claim if the plaintiff has not pursued available means of redress."); *Nessell v. Crown Life Ins. Co.*, 92 F. Supp. 2d 523 (E.D. Va. 2000) (dismissing a plaintiff's ERISA claim for failure to exhaust administrative remedies); *Phillips v. The Guardian Life Ins. Co. of America*, 1995 U.S. Dist. LEXIS 17382, at * 11 (E.D. N.C. 1995) ("The court thus finds that because plaintiff failed to exhaust her remedies under the benefit plan, it lacks subject matter jurisdiction over her ERISA claims.").

The Plan delineates the administrative appeals procedures available to Plan participants. Specifically, the Plan provides as follows:

> Normally, salary continuation pay will automatically be paid to all eligible participants who qualify under the Plan. However, if you have not received this benefit and you believe that you are entitled to it, or if you believe you are entitled to a larger benefit that you are receiving, you may file a claim with the Plan Administrator.

Compl., Ex. A at 9.

The Plan provides that, for Position Eliminations, claims must be filed within 90 days of learning the amount of benefits available under the Plan or within 90 days of learning there will be no benefit available under the Plan. Compl., Ex. A at 9. The claim must be in writing and delivered to the Plan Administrator, whose address is set forth in the Plan. Compl.,

Ex. A at 9.   Claims review responsibility lies with the Wells Fargo Corporate Employee Relations Department who must notify the participant of the decision to approve or deny a claim, in writing, within 90 days in accordance with ERISA regulations.  Compl., Ex. A at 9.  The Plan also provides for a detailed appeals process upon the denial of a claim.  Compl., Ex. A at 10.

At no time did Thomas pursue administrative remedies available under the Plan. Thomas makes no allegations that she attempted to appeal the amount of benefits she received or to seek review of the benefit amounts.  ERISA places a much higher burden on Thomas who had a duty to pursue all administrative remedies available to her under the terms of the Plan.  Given that she made no attempt to seek review or reconsideration, she cannot now pursue an ERISA claim.  Thomas' failure to exhaust her administrative remedies divests this Court of subject matter jurisdiction over her converted ERISA claims.  As all her claims are preempted, and thereby converted, by ERISA, dismissal of the Complaint in its entirety is warranted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## CONCLUSION

Thomas' claims are completely preempted under ERISA.   Each claim is predicated on the receipt of benefits under the Plan.  None of the claims can be resolved without interpretation of the Plan and the Agreement and Release which determined the amount of salary continuation benefits paid to Thomas.  Congress intended civil suits involving employee welfare benefit plans to be regulated and administered in a uniform manner.   Such uniformity is essential, as it enhances the ability of plan participants and their beneficiaries to enforce their rights to benefits under these plans.

Because Thomas' claims are completely preempted, they are recharacterized as claims arising under ERISA and are thus properly removable to federal court.   Once

recharacterized as ERISA claims, Thomas' action cannot survive, as her claims are barred under the terms of the Agreement and Release. Alternatively, Thomas' claims should be dismissed because she failed to satisfy the prerequisite to filing an ERISA action to recover benefits or enforce rights under the Plan. Thomas failed to pursue the administrative remedies afforded her under the Plan, and her failure to do so is fatal to her claims.

**WELLS FARGO INSURANCE**
**SERVICES OF WEST VIRGINIA, INC.**
**and WELLS FARGO BANK, N.A.**

By Counsel

_____s/ Jill E. Hall_____
Ricklin Brown (WVSB #500)
Jill E. Hall (WVSB #8812)
Bowles Rice McDavid Graff & Love LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia 25325-1386
Telephone: (304) 347-1101
Facsimile: (304) 347-1756
E-mail: rbrown@bowlesrice.com
E-mail: jhall@bowlesrice.com
**_Counsel for Defendants_**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JUDITH P. THOMAS,

      Plaintiff,

v.                                        Civil Action No. 2:07-0671

WELLS FARGO INSURANCE SERVICES
OF WEST VIRGINIA, INC., and
WELLS FARGO BANK, N.A.,

      Defendants.

## **CERTIFICATE OF SERVICE**

      I, Jill E. Hall, counsel for Defendants, do hereby certify that on this 25th day of October, 2007, I electronically filed the **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS WELLS FARGO INSURANCE SERVICES OR WEST VIRGINIA, INC. AND WELLS FARGO BANK, N.A.** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participant:

             J. Michael Ranson, Esq.
             Ranson Law Offices, PLLC
             1562 Kanawha Blvd. East
             P.O. Box 3589
             Charleston, West Virginia 25336

                                s/ Jill E. Hall
                                Jill E. Hall (WVSB #8812)

1932304.1